## HOLMES *et al.* v. HOLMES.

### No. 555.   Opinion Filed September 13, 1910.

#### (111 Pac. 220.)

1.  **COURTS—Probate Court—Orders—Recital as to Jurisdiction—Necessity.** The orders and decrees of a probate court are not required to recite the existence of facts or the performance of acts upon which the jurisdiction of the court depends; and the failure to recite such judisdictional facts does not raise a presumption that such facts do not exist.

2.  **HOMESTEAD—Death of Husband—Rights of Widow.** When a husband dies seised in fee of land occupied and used by himself and family as a homestead, his surviving wife, althougn without children, is entitled, by reason of section 1607, Wilson's Rev. & Ann. St. 1903, as against his heirs, to occupy and possess the whole of such homestead as long as she preserves its homestead character by maintaining a home thereon.

3.  **HOMESTEAD—Death of Husband—Possession of Widow—Partition.** Where a wife occupies as a home the homestead set apart by order of the probate court from the estate of her deceased husband for the use of herself as a home, the same is not liable to partition at a suit of the heirs of the deceased husband.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; A. H. Huston, Judge.*

Action by John Holmes and others against Luella Holmes. Judgment for defendant, and plaintiffs bring error. Affirmed.

*M. W. Hinch,* for plaintiffs in error.—Citing *Betts et al. v. Mills,* 8 Okla. 351.

*Nagle & Blair,* for defendant in error.—Citing: *Fore v. Fore,* 2 N. D. 260; *Weaver v. Bank* (Kan.) 94 Pac. 273; *Funk v. Baker,* 21 Okla. 402.

HAYES, J.   Plaintiffs in error, who originally brought this action in the district court of Kingfisher county, seek by it to obtain a decree adjudging them, as the heirs of Edwin M. Holmes, deceased, to be each the owner of an undivided one-fourteenth interest in 80 acres of land situated in Kingfisher county, and

granting them a partition thereof. The judgment of the trial court was against them and dismissed their petition.    Judgment was rendered upon the pleadings without the introduction of any evidence.

It is not necessary to set out the pleadings in full, and only such parts will be stated as are necessary to present the question of law which we are asked by this proceeding to decide.    For several years prior to the 5th day of September, 1905, defendant in error, Luella Holmes, resided with her husband, Edwin M. Holmes, upon the land in controversy as their homestead.    The fee-simple title thereto was owned by the husband.    On said mentioned date, Edwin M. Holmes died intestate and left serviving him his wife, defendant in error, without children.    Plaintiffs in error are the brothers of the deceased.    In November, 1905, an administrator of the estate of the deceased was appointed, and upon application of defendant in error the land in controversy was set aside to her as a homestead.    The administration of the estate was proceeded with, and all the debts of decedent were paid from his personal estate.    Whereupon notice of final settlement was given, at which time plaintiffs in error appeared before the probate court, made proof of their heirship, and obtained a judgment of that court decreeing them to be each the owner of an undivided one-fourteenth interest in said land.    Since the death of Edwin M. Holmes, defendant in error has continued to occupy the land as her homestead.    The pleadings disclose that she alone occupied said premises at the time of the institution of this suit. Plaintiffs in error contend in their brief that the order setting aside the homestead to defendant in error was void, because it was made without notice to them.

Whether the order of the probate court setting aside to defendant in error the homestead was made without notice to the heirs is not presented by the pleadings.    No allegation to that effect is made in plaintiffs' petition.    Defendant attaches to her answer as an exhibit said order, and the order fails to recite that notice was given; but failure of the order to recite that no-

tice was given to the heirs, if such notice to them is jurisdictional (which we do not decide), does not impeach the order, for, by section 1478, Wilson's Rev. & Ann. St. 1903, it is provided that the proceedings of a probate court are to be construed in the same manner and with like intendments as the proceedings of courts of general jurisdiction, and records, orders, judgments and decrees shall be accorded like force, effect and legal presumption as to the records, orders, judgments and decrees of district courts. And the orders and decrees of the probate court need not recite the existence of facts or the performance of acts upon which the jurisdicton of the court depends. Section 1780, Wilson's Rev. & Ann. St. It is sufficient, except as otherwise provided, that the order contains the matters ordered or adjudged, and there is no provision of the statute requiring that the order setting aside the homestead to the surviving wife or husband shall recite that notice was given to the heirs. In order for plaintiffs to have raised the question whether notice to them of application for the order setting aside the homestead was jurisdictional, it was necessary for them to have alleged such failure of notice. The record does not disclose what facts relative to defendant in error's then being the head of the family were before the probate court when the order setting aside to her the homestead was made; and we are not informed whether the order was made upon the theory that she was then the head of the family because of having some one dependent upon her, or that she is entitled to occupy and use the homestead as the surviving wife, although she be without children or other persons dependent upon her. The pleadings do disclose, however, that she is at this time occupying the premises alone without any one dependent upon her; and the question now presented for decision is: Has the surviving wife, without children, the right to retain possession and occupy the whole homestead, the title to which was owned by her deceased husband? A decision of this question incidentally involves the question: To whom did the title to the homestead descend upon the death of Edwin M. Holmes? If, as contended by counsel for defendant in error, the

surviving wife succeeded to the title to the land, it is then imma-
terial what her homestead rights therein are, for plaintiffs in error
would have no interest which would authorize them to maintain
this action.    By sections 6894 and 6895, Wilson's Rev. & Ann.
St., it is provided that property, both real and personal, of one
who dies intestate, shall pass to the heirs of the intestate subject to
the control of the probate court; and, when any such intestate shall
have title to any estate not limited by marriage contract, it is suc-
ceeded to and must be distributed, except as otherwise provided in
the Code and the chapter on Probate Courts, in the following man-
ner:    First, where there are children, the estate goes to the sur-
viving husband or wife and the children.    The share each receives
is dependent upon the number of children, and is fixed by the
statute.    Second, where decedent leaves no issue, the estate goes in
equal share to the surviving husband or wife and to decedent's
father; but, if there be no father, then one-half goes to the sur-
viving wife or husband and the other half to the brothers and
sisters of decedent; and, if he leaves a mother also, she takes equal
shares with the brothers and sisters.    Subsequent paragraphs pro-
vide for succession, if decedent leaves surviving no issue, husband
or wife, or father or mother, etc.

By reason of said section 6895, defendant in error, as the
wife of decedent, succeeded to one-half of all his estate, both real
and personal, and plaintiffs in error to the other half in equal
shares, unless their rights are affected by other statutes, which
is the case.    Section 1607, Wilson's Rev. & Ann. St., reads:

"Upon the death of either husband or wife, the survivor may
continue to possess and occupy the whole homestead until it is other-
wise disposed of according to law; and upon the death of both
husband and wife the children may continue to possess and occupy
the whole homestead until the youngest child becomes of age.    And
in addition thereto the following personal property must be im-
mediately delivered by the executor or administrator to such sur-
viving wife or husband, and child or children, and is not to be
deemed assets, namely:    First. All family pictures.    Second.    A
pew or other sitting in any house of worship.    Third.    A lot or
lots in any burial ground.    Fourth.    The family Bible and all

school books used by the family, and all other books as a part of the family library not exceeding in value one hundred dollars. Fifth. All wearing apparel and clothing of the decedent and his family. Sixth. The provisions for the family necessary for one year's supply, either provided or growing, or both; and fuel necessary for one year. Seventh. All household and kitchen furniture, including stoves, beds, bedsteads and bedding, not exceeding one hundred and fifty dollars in value. The executor or administrator must make a separate and distinct inventory of all the personal property specified in this section, by articles, and opposite each article give the appraised value of the same, in dollars and cents, as given in the general inventory of the appraisers appointed by the court, and return the same to the probate court, and no such property shall be liable for any prior debts or claims whatever."

Section 1608 provides that, in addition to the property mentioned in section 1607, there shall also be allowed and set apart for the surviving wife or husband, or the minor child or children of the decedent, all such personal property or money as is exempt by law from levy and sale on execution to be, with the homestead, possessed and used by them. Section 1613 provides that, when the personal property is set apart for the use of the family in accordance with sections 1607 and 1608, the same shall become the property of the surviving wife or husband, if there are no minor children; and if there are minor children, one-half of the same shall become the property of the widow or surviving husband and the other one-half shall go to the minor child, if there be but one, and, if there be more than one, then one-third of such property belongs to the surviving widow or husband and the remaining in equal shares to the minor children. This section determines to whom the title of the personal property which is set aside from the estate for the use of the family shall go; but it makes no provision relative to the title to the homestead or any other real estate of a decedent. Section 1607 does not provide that the title shall pass to the surviving husband or wife or to the children; it provides only that the husband or wife, and upon the death of both of them, the children, shall have the right to continue to pos-

sess and occupy the whole homestead for the time therein provided; and no other section of the chapter on Probate Courts or of the Code provides who shall succeed to the title to the homestead. The descent of such title, therefore, is governed by section 6895; and in this case, there being no children, the decedent leaving no father or mother, plaintiffs in error, as his surviving brothers; succeed each to one-fourteenth interest in the fee of the homestead, and defendant in error, as his surviving wife, succeeds to the other one-half interest. Do they succeed to such interest subject to any homestead right of decedent's family and the members thereof? If so, what is the extent of that right? In the language of section 1607 is found the answer to this question: The surviving wife or husband "may continue to possess and occupy the whole homestead *until otherwise disposed of according to law;* and upon the death of both husband and wife, the children may continue to possess and occupy the whole homestead *until the youngest child becomes of age."*

It is contended by counsel for plaintiffs in error that the phrase "until it is otherwise disposed of according to law" limits the right of the surviving husband or wife to occupy the homestead to the period during the administration of the estate; and that it is contemplated that when the estate is finally administered that right ceases and the homestead is to be partitioned as the other real estate of the decedent. What was intended by this language of the statute is not entirely clear, but that it was not intended that the homestead should become a part of the estate subject to administration and to the payment of the debts and liabilities of the decedent is made manifest by section 1610, which provides that the homestead shall not be subject to the payment of any debts or liabilities contracted by or existing against the husband or wife, or either of them, previous to or at the time of the death of such husband or wife, except as provided in the law relating to homesteads. As was said by the court in *Fore v. Fore's Estate,* 2 N. D. 260, 50 N. W. 712, in construing a statute of that state in the identical language of section 1607, there are various ways by which, under the law, the

right of occupancy of the homestead may be terminated. It may be sold for taxes; or upon foreclosure of any mortgage thereon executed by both husband and wife, or upon execution to enforce judgment for the purchase price or any part thereof, or in the enforcement of a mechanic's lien. A termination of the homestead right under any of the foregoing procedures would be a termination thereof within the meaning of the phrase "until it is otherwise disposed of according to law," and we think the Legislature, in the use of such language, had in contemplation the termination of the homestead right by such methods, rather than intended to provide that the right of use and occupancy conferred by section 1607 should be only temporary and be terminated with the administration of the estate. It is clear that it was not intended that such right should be terminated upon the death of both husband and wife, when there are children; for it is provided that such right shall continue until the youngest child becomes of age.

But it is insisted that the surviving wife must be the head of the family in order to be entitled to possess and occupy the homestead under the provisions of section 1607, and the case of *Betts et al. v. Mills,* 8 Okla. 351, 58 Pac. 957, is cited as deciding this question favorably to the contention of plaintiffs in error. In the second paragraph of the syllabus to that case, it is held that the provisions of section 1607 do not confer upon the single survivor of the family, husband or wife, the right to continue to occupy and possess the whole homestead; that such right is dependent upon the survivor's being the head of the family. This conclusion was reached after it had been found that the evidence in the case established that the homestead claimant had abandoned the premises claimed by him as his homestead, and for that reason he would not be entitled to hold the same as exempt from execution, even though his not being the head of a family did not defeat his right to continue to hold his homestead upon the death of his wife. The question decided by the court in the syllabus was presented by the issues in the case; and, although a de-

cision thereon was not absolutely necessary to dispose of the case, such decision is not *dictum.* *Florida Cent. Ry. Co. v. Schutte,* 103 U. S. 118, 26 L. Ed. 327; *Clark v. Thomas,* 51 Tenn. 421; *Kane v. McCown,* 55 Mo. 181. But we think that because the first question decided disposed of the case and required an affirmance of the case, regardless of the conclusion reached by the court upon the question decided in the second syllabus, the learned justice who delivered the opinion of the court in that case reached his con· clusion without giving to the question that consideration and in- vestigation which characterize his opinions and the importance of the question demanded. He announces his conclusion without citing or referring to any authority upon the real question decided. The authorities cited in the opinion all go to the question of what constitutes a family, and as to what is essential to make one the head of a family. We think the construction given the statute in that case is within neither its letter nor spirit. The exemption of the homestead is a creation of statutory law; and the provisions of the statutes of the various states thereon are by no means uni- form, and it is somewhat difficult to make a strict classificatior. of the decisions upon this or any other question arising under the homestead statutes. It is the almost uniform rule that an exist·· ence of a family is essential to the acquisition of a homestead, but, when a homestead has once been acquired, there is some division among the authorities whether the continuation of the homestead depends upon the continuation of the family and is destroyed by the breaking up of the family by death of the wife or husband, without children, or by the children departing from the homestead.

There is nothing in the letter of section 1607 that makes the right of the surviving wife or husband to use and occupy the homestead depend upon the decedent's leaving children sur- viving him or her. The language of the statute is: "Either the husband or wife, the survivor, may continue to possess," etc.—not, "either the husband or wife, the survivor, if there are children may continue," etc. At the time of the decision in the case of

*Betts et al. v. Mills, supra,* the exemption of the homestead of the family was reserved to the head of the family. Section 2985, Wilson's Rev. & Ann. St. Under this statute it was held that a wife was not entitled to a homestead out of her own land, nor the husband entitled to a homestead belonging to his wife; and that the exemption thereof was a right conferred only upon the head of the family and applied only to property the title to which was owned by the husband. *McGinnis v. Wood et al.,* 4 Okla. 499, 47 Pac. 492. Section 2985 was amended by an act of the territorial Legislature, approved March 15, 1905 (Sess. Laws 1905, p. 255), so as to provide that the homestead shall be reserved to every family as exempt, instead of the head of the family, whether the title to the same is lodged in or owned by the husband or wife. We do not consider, however, that this change in the statute has any effect upon the question involved here, because the existence of a family under both statutes is essential to an acquisition of a homestead. The beneficent purpose of both statutes is to preserve and protect the home in the possession and enjoyment of not only the head of the family, but all the members thereof, against the exaction of creditors and the improvidence or misadventure of the head of the family upon whom the members thereof are dependent for support. It seems to us that it would be a construction strained and foreign to the spirit of the statute to hold that it was intended, so long as the husband who may by labor support his wife, to protect the wife against the misfortune of being deprived of her home to satisfy the debts of the husband, who has perhaps suffered a business failure or financial loss; but, when the hour of death comes with its sorrow and the expenses that sickness and death entail upon the family, the law will then withdraw from her the shield that protected her in her home while her husband lived and let the accumulated misfortunes or improvidences of the husband that the law has withheld until the dark hour of his death be then visited upon her. This would indeed be converting that which was intended for a shield into a sword. Not only do we think the decision in *Betts v. Mills, supra,* against both

the spirit and letter of the statue, but, so far as we have been able to ascertain from an investigation of authorities, it is against the weight of authority construing statutes the same or similar to the one under consideration.   In Arkansas, where the exemption of the homestead is reserved to a person who is married or the head of the family, it is held that the existence of a family is necessary to the acquisition of a homestead, but that when once acquired and still occupied by the owner it is not lost by death of his wife and the arrival of the children at the age of maturity or their removal from the premises.   *Stanley et al. v. Snyder et al.,* 43 Ark. 429; *White Sewing Machine Co. v. Wooster,* 66 Ark. 382, 50 S. W. 1000, 74 Am. St. Rep. 100; *Baldwin v. Thomas,* 71 Ark. 206, 72 S. W. 53.

In *Taylor v. Boulware,* 17 Tex. 74, 67 Am. Dec. 642, where the statute exempts "the homestead of a family," the death of the wife without children does not terminate the homestead exemption in behalf of the husband, where he continued to reside thereon.

In *Silloway v. Brown,* 12 Allen (Mass.) 30, it is said:

"Although a homestead estate cannot be acquired except by a householder having a family, yet when once acquired, and still occupied by him, it has been held not to be defeated or lost by the death or absence of his wife and children.   *Doyle v. Coburn,* 6 Allen [Mass.] 73.   Any other construction would render a husband, who had been deprived of his family by accident or disease, or by their desertion, without any fault of his, liable to be instantly turned out of his homestead by his creditors."

"It seems to be settled that, on general principles, a homestead once acquired by the head of a family will not be defeated on account of the loss or death of the wife or children, if he continues to occupy it."   (*Beckmann v. Meyer,* 75 Mo. 333.)

*Fore v. Fore's Estate, supra,* is another case in point.   In construing a statute the same as section 1607, it was held that, when the decedent leaves a widow but no minor child, and dies seised in fee of land occupied and used by himself and family at the time of his death, his surviving widow is entitled, as against his heirs and devisees, to occupy and possess the whole of such homestead as long as she preserves the homestead character by

maintaining a home thereon. Other cases either in point or containing reasoning that supports the rule which we here adopt are: *Palmer v. Sawyer*, 74 Neb. 108, 103 N. W. 1088; *Wilkinson v. Merrill*, 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632; *Barney v. Leeds*, 51 N. H. 253; *Roth v. Insley*, 86 Cal. 134; *Burns v. Keas*, 21 Iowa, 257; *Ellis v. Davis*, 90 Ky. 183, 14 S. W. 74; *Holder v. Holder*, 120 Ky. 802, 87 S. W. 1100; *Weaver v. First National Bank*, 76 Kan. 540, 94 Pac. 273, 16 L. R. A. (N. S.) 110, 123 Am. St. Rep. 155; *Cross v. Benson*, 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560. To the class of cases holding the contrary view the following cases belong: *Heard v. Downer et al.*, 47 Ga. 629; *Benedict, Hall & Co. v. Webb*, 57 Ga. 348; *Hill v. Franklin*, 54 Miss. 632.

In so far as views herein expressed are in conflict with *Betts et al. v. Mills, supra*, that case is overruled; and we conclude that, upon the death of Edwin M. Holmes, his heirs succeeded to the title to all his real estate, including his homestead, as provided by section 6895, Wilson's Rev. & Ann. St., subject, however, to the right of defendant in error to use and occupy the same as a homestead, so long as she resides thereon and makes it her home. While she occupies said premises as her home and homestead, the same is not subject to be partitioned at the suit of the heirs. *Miller v. Hassman et al.*, 24 Okla. 381, 103 Pac. 577; *Funk v. Baker et al.*, 21 Okla. 402, 96 Pac. 608, 129 Am. St. Rep. 788.

The judgment of the trial court is affirmed.

All the Justices concur.