## J. B. ROLATOR v. LLOYD KING.

#### (Filed June 25, 1903.)

1. **FAMILY—Head of.** To constitute a person the head of a family within the purview of our exemption laws, there must be at least a condition of dependence on the part of the other members upon the head, and either a legal or moral obligation on the part of the head to support and maintain them.

2. **SAME—Exemptions.** The defendant in error, who resides with his widowed mother and two sisters, who are wholly dependent upon him for their support and maintenance, is entitled, under section 2844 of our statutes, as the head of the family, to hold exempt from seizure by garnishment his current wages and earnings for personal or professional services earned within the last ninety days.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before Wm. P. Harper, Probate Judge, Trial Judge.*

*W. F. Wilson* and *B. O. Young,* for plaintiff in error.

*E. W. Stone* and *H. R. Winn,* for defendant in error.

Opinion of the court by

HAINER, J.: This is an action commenced in the probate court of Oklahoma county by the plaintiff in error, plaintiff in the court below, against the defendant in error, to recover $121 for professional services. At the same time the plaintiff caused a garnishment summons to issue to the

Choctaw, Oklahoma & Gulf Railway Company, alleging that it had in its possession and control certain moneys belonging to the defendant. Afterwards the defendant moved to discharge the garnishment, on the ground that he is the head of a family, consisting of his mother and two sisters who reside with him, and who are wholly dependent upon him for support, and that the money garnished by the plaintiff in this action is money due him for wages earned during the past ninety days, and that the whole amount so garnished is necessary for the support of himself, his mother and two sisters. The question of the validity of the garnishment was submitted to the court upon affidavits and an agreed statement of facts. Upon this issue the court found for the defendant and discharged the garnishment, and from this ruling and order the plaintiff brings the case here for review.

The plaintiff in error claims that the court erred in holding that the defendant is the head of a family, and that the wages of the defendant earned during the last ninety days are exempt from seizure under the writ of garnishment. We think the court correctly found that the defendant was the head of a family within the meaning of section 2844 of the statutes of 1893, and that the wages and earnings for his personal services for the past ninety days were exempt from seizure under the writ of garnishment. Section 2844 of our statute provides as follows:

"The following property shall be reserved to the head of every family residing in the territory exempt from attachment or execution and every other species of forced sale for the payment of debts, * * * sixteenth, all current wages and earnings for personal or professional services earned within the last ninety days."

Section 2844 provides:

"That the earnings of a debtor, who is a resident of this territory, for his personal services at any time within three months next preceding the issuing of an execution, attachment or garnishment process, cannot be applied to the payment of his debts when it is made to appear by the debtor's affidavit or otherwise that such earnings are necessary for the maintenance of a family supported wholly or partly by his labor."

As to what constitutes the head of a family under the exemption laws, the authorities seem to be conflicting, but the great weight of modern authorities, we think, hold that in order to constitute the head of a family within the purview of the exemption laws, there must be at least a condition of dependence on the part of the other members upon the head, and a legal or moral obligation on the part of the head to support them, and that a mere collection of individuals does not satisfy the requirements of the statute.

In *Tyson v. Reynolds,* 52 Iowa, 451, a widower with whom his son and his son's wife lived, paying no board or other compensation, was held to be the head of a family. "A family," said the court, "is 'the collective body of persons who live in one house, under one head or manager.' The relation existing between such persons must be of 'a permanent and domestic character, not abiding together temporarily as strangers."

In *Roco v. Green,* 50 Tex. 483, the court laid down the following general rules to determine when the relation of a family, as contemplated by law, exists; first, it is one of social status, not of mere contract; second, legal or moral obligation on the head to support the other members; third, corresponding state of dependence on the part of the other members for this support.

In *Wade v. Jones,* 20 Mo. 75, is·was held that an unmarried man who. kept house and supported his widowed sister and her children, the sister keeping house for him, was the head of a family and entitled as such to claim the chattel exemption. "It is not necessary," said the court, "that the relation of husband and wife, or father and child, or mother and child, should exist in every case to constitute a family. The man who controls, supervises and manages the affairs about the house is the head of a family, and such a man need not necessarily be a husband or a father."

In *State v. Kane,* 42 Mo. App., 253, an unmarried man who supported his mother, who lived with him and kept house for him, was held to be the head of a family.

In *Arnold v. Waltz,* 53 Iowa, 706, it was held that an unmarried woman keeping house, and bringing up two children of her diseased sister, was the head of a family, though she had taken no steps to adopt them formally.

In the American and English Encyclopedia of Law, (2nd Ed.) Vol. 12, page 90, the rule is thus stated:

"It is very generally held that, to constitute the head of a family within the purpose and intent of the exemption laws, there must be at least a condition of dependence on the part of the other members upon the head, and a legal or moral obligation on the part of the head to support them, and that a mere aggregation of individuals is not enough."

In the case at bar, even if we concede that under our statute, strictly speaking, there is no legal obligation resting upon the defendant to support his invalid mother and dependent sisters, yet we think there is a strong moral obligation, founded upon natural justice, to support and maintain them, and that it satisfies the requirements of our exemption laws.

The judgment of the probate court is right, and it is therefore affirmed.

Burford, C. J., and Pancoast, J., absent; all the other Justices concurring.