## ANTRIM LBR. CO. v. HAZEL.

No. 16722—Opinion Filed May 18, 1926.

### 1. Attachment—Grounds—Removal of Property from State in Good Faith.

A citizen of this state has a right, in good faith, to move all of his property to another state, and such removal of his property will not authorize the issuance and levying of a writ of attachment thereon. It is only where one is about to remove his property, or a part thereof, out of. the jurisdiction of the court. with the intent to defraud his creditors, that an attachment on the ground of removal of property will lie.

### 2. Same—Intent to Defraud Creditors — Proof.

In order to sustain an attachment issued upon the ground that the defendant has disposed of his property with intent to. defraud, hinder, or delay his creditors, the intent to defraud must be established by the person who alleges such intent.

### 3. Appeal and Error — Review—Discretion of Trial Court—Dissolution of Attachment.

Applications to dissolve attachments address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error · from District Court, Comanche County: A. S. Wells, Judge.

Action by the Antrim Lumber Company against John M. Hazel to recover a money judgment on promissory notes. Judgment for defendant and plaintiff brings error. Affirmed.

Black & Black, for plaintiff in error.

A. M. Reinwand and Andrew Crosby. for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Comanche county, Okla., by the Antrim Lumber Company, a corporation, plaintiff in error, plaintiff below, against John M. Hazel, defendant in error, defendant below, to recover a money judgment on five promissory notes. The parties will be referred to in this opinion as plaintiff and defendant. as they appeared in the lower court.

The plaintiff sued out an attachment and levied upon a carload of granite belonging to the defendant. The grounds for attach-

ment were that the defendant was about to remove his property out of the jurisdiction of the court, placing it beyond the reach of his creditors, and that he was about to convert his property, or a part thereof, into money for the same purpose, and that the defendant had assigned, removed, or disposed of, or was about to dispose of, his property, or a part thereof, with intent to defraud, hinder, and delay his creditors.

The defendant filed a verified motion to dissolve the attachment, in which he alleged the grounds contained in the affidavit for attachment were untrue and false, and denied generally all of the allegations contained in the affidavit for attachment, and that there are no facts to support said affidavit for attachment, and asked that the same be dissolved.

On a trial upon the issue of the attachment, the court dissolved the attachment and released the property from the order. From this order of the court, dissolving the attachment, the cause comes regularly upon appeal to this court for review.

The testimony of the witnesses is not set out in detail in the case-made. A stipulation by the attorneys for the parties contains the substance of the testimony of the two witnesses, one testifying for the plaintiff and the other for the defendant. The pertinent part of the testimony for the plaintiff, as contained in the stipulation, is that the five notes sued on were given by the defendant to the plaintiff for a balance due upon a truck sold by plaintiff to the defendant for $1,750, upon which the defendant had paid the sum of $250 in cash at the time of the purchase, and had paid three notes of $250 each, making a total of $1,000, leaving a balance of $750 unpaid; that defendant claimed some defect in the truck, and the plaintiff agreed to allow a credit of $250, and accepted as settlement for the balance the five notes of $100 each, payable monthly, sued on, and a check for $160 in payment of interest, which check when presented was refused payment by the bank, and that the defendant, complaining of poor business, requested an extension of time for payment; that defendant was engaged in the quarrying and shipping of granite, and had shipped several carloads, but had never paid anything, and finally refused to pay, and said plaintiff could sue him, but it would do no good; that the truck was worn out and of no value, and the defendant had no property subject to execution sufficient to justify an execution for amount claimed, and that the best information was that he was

largely in debt; that the defendant, himself, testified that he was shipping the granite out of the state for the purpose of having the same polished for monumental purposes, and that the shipment was going forward in the usual course of business, and denied that he had any intent to defraud, hinder or delay his creditors, or any of them.

The only error assigned by attorneys for plaintiff is:

"Error of the district court in sustaining motion of the defendant in error for the dissolution of said attachment."

Attorneys for plaintiff cite numerous authorities from other jurisdictions, and the only authority cited in their brief from this court is the case of R. C. Williams v. Fourth National Bank of Wichita, Kan., 15 Okla. 477, 82 Pac. 496, in which case it was decided that where a sale of a stock of goods was made in bulk, but the evidence showed that such sale was in fact made in good faith and without actual fraud, it was held:

"Such finding overthrows the statutory presumption of fraud, and in such case the attachment cannot be justified, and should be dissolved."

So, in this case, the vital question is, Was the defendant debtor shipping the raw granite out of the county and out of the state, "with the intent to defraud, hinder or delay creditors?" The word "intent" must be construed in the sense of "purpose," and the debtor must be found to have been following a purpose to defraud the complaining creditor. The right to an order of attachment in favor of a creditor is purely statutory, and the word "intent," as used in the statute, has a certain, definite, and particular meaning, and it was intended by the lawmakers that the debtor must have had a purpose in his mind at the time to defraud, hinder or delay his creditors. In this case the defendant was engaged in the business of quarrying and shipping out the raw granite for monumental purposes, and had been engaged in this business for sometime before this action arose, and this shipment was being made in the due course of business, just as all other shipments had been made by him, and there is no evidence of any attempted concealment or of any effort to conceal the proceeds derived from said shipment, but the first finding of the court clearly shows that this shipment had been contracted and that he was indebted for labor claims, and ordered the same shipped and sold, and the proceeds applied to the payment of laborers' claims and for demurrage due on the car to the railroad company, and

whatever balance remaining to be paid into the court subject to the final decision off the court.

The testimony further shows that the defendant debtor is a poor man, without property other than that quarried from the earth, and that his only source of livelihood is obtained from this source, and it is more evident from the facts in this case that the defendant is unable to pay the debt rather than he is unwilling to pay it. The evidence shows that he paid the cash-down payment and three notes of $250 each at due dates, and that on account of poor business conditions he claimed that he was not able to meet the balance of the payments, and an adjustment was made by which it was agreed that he should have a credit of $250 on account of a defect in the truck sold. Under such conditions the trial court refused to find that a failure to make the payments and the shipment of the granite were not sufficient ground for attachment, and that there was no fraudulent intent, as contemplated by the statute authorizing the attachment in this case.

In the early case of Dunn v. Claunch et al., 13 Okla. 577, 76 Pac. 143, this court held:

"A citizen of this territory has a right, in good faith, to move all of his property to another state, and such removal of his property will not authorize the issuance and levying of a writ of attachment thereon. It is only where one is about to remove his property, or a part thereof, out of the jurisdiction of the court, with the intent to defraud his creditors, that an attachment on the ground of removal of property will lie."

In the case of First State Bank of Durant v. Smith, 43 Okla. 320, 140 Pac. 150, it was said by this court:

"In order to sustain an attachment issued upon the ground that the defendant has disposed of his property with intent to defraud, hinder, or delay his creditors, the intent to defraud must be established by the person who alleges such intent."

In the case of Farmers' Exchange Bank of Lindsay v. Cutler et al., 100 Okla. 193, 229 Pac. 186. it was held by this court:

"Applications to dissolve attachments address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court."

To the same effect are the cases of Williams v. Farmers Gin & Grain Co., 13 Okla. 5, 73 Pac. 269, and Mott v. Zimmerman, 100 Okla. 299, 229 Pac. 227.

Under the above authorities and the record evidence in this case, we are inclined to the opinion that the judgment of the trial court was correct in dissolving the order of attachment in this case, and that the judgment of the trial court should be and it is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 6 C. J. p. 67 § 83. (2) 6 C. J. p. 451 § 1048. (3) 4 C. J. p. 803 § 2767. See under (1, 2) anno. 30 L. R. A. 472; 2 R. C. L. p. 823.